IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No.   21-CR-00194-RAW |
| PAULA AMBER CHISHOLM, | |
| *Defendant*. | |

### GOVERNMENT'S OBJECTION TO DEFENDANT'S NOTICE OF EXPERT WITNESS

COMES NOW the United States of America, by and through its attorneys, Christopher J. Wilson, United States Attorney, and Morgan Muzljakovich, and hereby submits its objection to the defendant's expert witness, Dr. James Michael Wood, testifying at trial. Dr. Wood's testimony is not reliable, is not relevant to this case, and would invade the province of the jury by offering opinions on the credibility of the Government's witnesses. As such, the United States respectfully requests the Court preclude Dr. Wood from testifying.

I. **FACTUAL & PROCEDURAL BACKGROUND**

On April 20, 2021, the Defendant was charged in a complaint with Child Abuse in Indian Country in violation of Title 18 U.S.C. §§ 1151, 1153 and Title 21, Oklahoma Statute, § 843.5. (Doc. 1). On May 13, 2021, the Grand Jury returned an Indictment for Paula Amber Chisholm with one count of Child Abuse in Indian Country violation of 18 U.S.C. §§ 1151, 1153, and Title 21, Oklahoma Statute, § 843.5(A), and one count of Child Neglect in Indian Country in violation of 18 U.S.C. §§ 1151, 1153, and Title 21, Oklahoma Statute, § 843.5(C). (Doc. 16).

On December 3, 2019, school officials at Jefferson Early Childhood Center called for an ambulance to transport five year old, K.C., to the hospital due to his lethargic behavior and possible injury. While at school, K.C.'s teacher noticed that K.C. was acting very sluggish and had bruising

on his ears, left cheek, and eye. School Counselor Ginger Cornish questioned K.C. about the marks and, although reluctant to speak, K.C. identified his aunt as having caused the marks. K.C. was taken to McAlester Regional Health Center for evaluation. Detective Clark with the McAlester Police Department responded to the call and met the ambulance at the hospital.

At the time, K.C. and his older sister were in a guardianship with his maternal grandmother, C.S. K.C. and his sister, B.S., lived with C.S., several cousins, and his aunt the Defendant Paula Chisholm. Due to C.S.'s deteriorating health and wheelchair bound status, K.C. was primarily cared for by the Defendant. The Defendant arrived at the hospital after being notified by the school that K.C. needed to be medically transported. The Defendant arrived at the hospital with a bag of food and requested investigators tell K.C. that she was there and had his favorite snacks for him.

At the hospital, K.C. informed staff and the hospital social worker that the Defendant would whip him and pinch his ears. While at the hospital, medical staff and law enforcement noted numerous injuries to K.C. The injuries included cuts, abrasions, bruises, and pressure ulcers in various stages of healing. Also noted was purple bruising on the tips of both of K.C.'s ears. In addition to the physical injuries, K.C. was extremely malnourished. The description given in reports is that K.C. looked like "a little old man." His hair was thin, body extremely small, and he weighed twenty-eight pounds. While at the hospital and the child advocacy center later that same day, K.C. was extremely hungry and ate everything the staff gave him.

K.C., B.S., and two of K.C.'s cousins were forensically interviewed later that day at the local Child Advocacy Center. K.C. was reluctant to talk with the interviewer but expressed fear of the Defendant and stated that his aunt punched him. B.S., B.C., and M.C. made no disclosures during their interviews that day. K.C. and B.S. were removed by the Oklahoma Department of Human Services and placed in the home of their biological father and step-mother.

After being placed with their father, K.C. and B.S. continued to disclose incidents of abuse involving the Defendant. K.C.'s father informed police of the subsequent disclosures and the children were brought back to the advocacy center for follow-up forensic interviews on December 13, 2019. During the interview of K.C., K.C. disclosed that the Defendant beat him up, punched his weewee, and kicked him. K.C. stated that the Defendant whipped him and his sister, and that no one fed him. During the interview of B.S., B.S. stated that the Defendant would step on K.C., punch and kick him, and use a basket and belt to whip K.C. B.S. stated that there was a sore on K.C.'s leg from where the Defendant used a belt and the metal part caused the injury. B.S. told the interviewer that the Defendant would pull down K.C.'s pants and whip him with the belt. She disclosed that the Defendant would use a big black basket and put it over K.C. B.S. told the interviewer that sometimes the Defendant would allow K.C. to eat and sometimes she would not. After being placed with his father, K.C. gained six-and-a-half pounds in ten days and according to Detective Clark "looked like a different kid."

On February 23, 2022, the Defendant gave notice under Federal Rule of Criminal Procedure 16(b)(1)(C) of her intent to call Dr. James M. Wood, Ph. D., as an expert at trial. On March 9, 2022, the Defendant supplemented her notice with additional information. On March 10, 2022, the Defendant filed a Notice of Compliance with Rule 16(b)(1)(C) RE: Notice of Expert Witness. [Doc. 60]. At the pretrial conference on March 24, 2022, the Court instructed the Defendant to file a Supplemental Notice on record and the Court gave the Government leave to file a Motion in Limine on the Expert by March 29, 2022..

II.     **LAW & ARGUMENT**

The right to present a complete defense is anchored in the Fifth and Fourteenth Amendment right to due process and the Sixth Amendment right to compulsory process. *United States v.*

*Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005). Because "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," due process guarantees are implicated whenever the exclusion of evidence acts to obstruct this right. *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). But the opportunity to present evidence is not unfettered – the Court's resolution of evidentiary questions is constrained by the twin prongs of relevancy and materiality and guided by the established rules of evidence and procedure. *Solomon*, 399 F.3d at 1239.

Under Rule 702, the Court must find that proposed expert testimony is both reliable and relevant in that it will assist the trier of fact before permitting a jury to assess such testimony. Fed. R. Evid. 702. Assuming the reliability prong is met, the Court must still consider other non-exclusive factors to determine whether the testimony will assist the trier of fact. First, the Court must determine whether the testimony is relevant. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993)). Second, the Court must determine whether the proposed expert testimony is within the juror's common knowledge and experience. *Id.* Third, whether the proposed expert testimony will usurp the juror's role in evaluating a witness's credibility. *Id*.

    a.  <u>Dr. Wood's Testimony is Not Relevant.</u>

In this case, most of Dr. Wood's expected testimony is not relevant. Under Rule 702, the inquiry of whether expert testimony will assist the trier of fact is essentially a question of relevance. *United States v. Arney*, 248 F.3d 984, 990 (10th Cir. 2001) (citing *United States v. Rice*, 52 F.3d 843, 847 (10th Cir. 1995)). Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any facts that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

4

Assuming Dr. Wood's testimony is reliable, it is not relevant to the current case. According to the defense's notice, Dr. Wood will testify regarding forensic interviews and the appropriate protocols and techniques that should be employed in forensic interviews of children. Additionally, Dr. Wood is expected to testify that he reviewed the forensic interviews of the minors in this case and will opine about the insufficiency of certain aspects of the interview and then will further testify regarding the credibility of certain statements made by the victim and other witnesses. Further, according to the Defendant's Notice, Dr. Wood is expected to opine that the children were "coached and questioned by untrained individuals…and that this questioning involved the use of highly suggestive techniques that can lead children to make false statements."

Dr. Wood's testimony is not relevant because it is not helpful to the finder of facts and attempts to usurp the proper method for questioning a witness's credibility - which is cross examination. Dr. Wood's testimony would require the introduction of inadmissible hearsay evidence to the jury and would unnecessarily confuse the jury. Under Federal Rule of Evidence 703, an expert can rely on inadmissible evidence to form an opinion, but that evidence is only admissible to the jury if the probative value is substantially outweighed by the prejudicial effect. However, playing bits and pieces of a forensic interview for an expert to opine on would not give the finder of fact a clear picture of the entirety of the interview and would be extremely misleading and highly prejudicial. The proper method for the defense to question the validity of a prior statement by a witness would be during cross examination of that witness. The Government intends to call the victim and the victim's sibling as witnesses during the trial. Both the victim and his sibling were forensically interviewed, and the Defendant will have ample opportunity to cross examine both witnesses about any inconsistent statements. Because the testimony of Dr. Wood, particularly as it pertains to the hearsay statements made by the victim and his sibling in the

forensic interviews, is not helpful to the finder of fact and it is not relevant, it should therefore be excluded.

      b. <u>Dr. Wood's Testimony Would Usurp the Role of the Jury.</u>

Here, Dr. Wood's testimony would usurp the jury's role by making credibility determinations on the defendant and the victim. "The credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993); *see United States v. Ganadonegro*, 805 F.Supp.2d 1188, 113 (D.N.M. 2011) (Browning, J.) (excluding expert testimony on whether defendant's confession was credible). Such testimony: (1) "usurps a critical function of the jury"; (2) "is not helpful to the jury, which can make its own determination of credibility"; and (3) when provided by "impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quoting *Toledo*, 985 F.2d at 1470). Expert testimony that vouches for the credibility of other witnesses lacks "relevance [under rule 401] and would not 'assist the trier of fact as required by Rule 702.'" *United States v. Adams*, 271 F.3d 1236, 1246 (10th Cir. 2001) (quoting *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (en banc)).

An expert witness invades the province of the jury when he opines on whether a witness was actually abused. *See e.g., United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) ("Because jurors are equally capable of considering the evidence and passing on the ultimate issue of sexual abuse…a doctor's opinion that sexual abuse has in fact occurred is ordinarily neither useful to the jury nor admissible."). At the state-court sexual abuse trial that culminated in *Hellums v. Williams*, 16 Fed. App'x 905 (10th Cir. 2001) (unpublished), the prosecution offered the expert testimony of a clinical psychologist who said that "he found no reason to question the victim's allegations of

sexual abuse." *Id*. At 911. And a child and family counselor "affirmatively indicated [in testimony] that the abuse had occurred based on the victim's statements to" the counselor. Id. At 910-911. Each instance of an expert witness passing judgement on the credibility of the alleged victim invaded the province of the jury, the Tenth Circuit held. *Id*. at 911.

    According to the defense's notice, Dr. Wood's opinion testimony is based on a review of the evidence provided by the Government in discovery including the various forensic interviews. In addition to the general testimony about forensic interview techniques and procedures, Dr. Wood's proposed testimony includes his review of the forensic interviews and his opinions regarding the legitimacy of the disclosures made by the victim and his siblings during the forensic interviews. While the Defendant does not come out and say in the notice that he will testify to the victim's credibility, the only purpose behind Dr. Wood's proposed testimony is to call into question the statements made by the victim during the forensic interview and to call into question its reliability.

    Much like it would be highly inappropriate for the Government to seek to call a witness to bolster the victim's credibility by having the witness testify that the forensic interview was conducted according to protocol and therefore reliable, it would be highly misleading to allow the Defendant's proposed expert to attempt to do the opposite. Allowing the Defendant's expert to opine on the legitimacy of the victim's statements because of the interview procedures would be allowing the Defendant's expert to testify, in a round about way, to the victim's credibility. Credibility is an issue that should be left solely to the jury. The proposed testimony is highly inappropriate for expert witness testimony as it would usurp the jury's role as fact finder. As such, Dr. Wood's testimony should be precluded.

    **III. CONCLUSION**

For the reasons mentioned above, the United States respectfully asks the Court to preclude Dr. Wood's testimony in its entirety.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/    Morgan Muzljakovich
MORGAN MUZLJAKOVICH
OK BAR # 32852
Assistant United States Attorney
520 South Denison
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
Morgan.Muzljakovich@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March 2022. I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Susan Anderson, Attorney for Defendant

/s    Morgan Muzljakovich
Office of the United States Attorney