# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. PAULA AMBER CHISHOLM, *Defendant.* | Case No. CR- 21-194-RAW |

## UNITED STATES' TRIAL BRIEF

COMES NOW the United States of America, by and through Christopher J. Wilson, United States Attorney, and Morgan Muzljakovich, Assistant United States Attorney, respectfully submits its brief for trial in the above-styled case.

## STATUS OF THE CASE

A.   A jury trial is currently set for February 1, 2022, before the Honorable Ronald A. White.

B.   Estimated time for trial (including jury selection) is 3 days.

C.   The defendant is not custody.

D.   Trial by jury has not been waived.

E.   The United States expects to call approximately 10 to 15 witnesses.

F.   An interpreter is not needed.

G.   The parties have not reached any stipulations at this time, nor have the parties yet discussed the possibility of pre-admitting exhibits. The United States is interested in doing so.

H.   Defendant has not given the United States notice of any affirmative defense, provided the United States with any discovery, or disclosed any expert witnesses.

## PROCEDURAL HISTORY

On May 13, 2021, a grand jury returned a two-count Indictment, charging defendant with:

- one count of Child Abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 21 Okla. Stat. § 843.5(A), relating to events which occurred beginning on or about November 20, 2019 and continuing until on or about December 5, 2019.

- one count of Child Neglect in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 21 Okla. Stat. § 843.5(C), relating to events which occurred beginning on or about September 1, 2019 and continuing until on or about December 5, 2019.

## FACTUAL OVERVIEW

On December 3, 2019, school officials at Jefferson Early Childhood Center called for an ambulance to transport five year old, K.C., to the hospital due to his lethargic behavior and possible injury. While at school, K.C.'s teacher noticed that K.C. was acting very sluggish and had bruising on his ears, left cheek, and eye. School Counselor Ginger Cornish questioned K.C. about the marks and, although reluctant to speak, K.C. identified his aunt as having caused the marks. K.C. was taken to McAlester Regional Health Center for evaluation. Detective Clark with the McAlester Police Department responded to the call and met the ambulance at the hospital.

At the time, K.C. and his older sister were in a guardianship with his maternal grandmother, Cecilia Stines. K.C. and his sister, B.S., lived with Stines, several cousins, and his aunt, the Defendant Paula Chisholm. Due to Stines' deteriorating health and wheelchair bound status, K.C. was primarily cared for by the Defendant. The Defendant arrived at the hospital after being notified by the school that K.C. needed to be medically transported. The Defendant arrived at the hospital with a bag of food and requested investigators tell K.C. that she was there and had his favorite

snack for him.

At the hospital, K.C. informed staff and the hospital social worker that the Defendant would whip him and pinch his ears. While at the hospital, medical staff and law enforcement noted numerous injuries to K.C. The injuries included cuts, abrasions, bruises, and pressure ulcers in various stages of healing. Also noted was purple bruising on the tips of both of K.C.'s ears. In addition to the physical injuries, K.C. was extremely malnourished. The description given in reports is that K.C. looked like "a little old man." His hair was thin, body extremely small, and he weighed twenty-eight pounds. While at the hospital and the child advocacy center later that same day, K.C. was extremely hungry and ate everything the staff gave him.

K.C., B.S., and two of K.C.'s cousins were forensically interviewed later that day at the local Child Advocacy Center. K.C. was reluctant to talk with the interviewer but expressed fear of the Defendant and stated that his aunt punched him. B.S., B.C., and M.C. made no disclosures during their interviews that day. K.C. and B.S. were removed by the Oklahoma Department of Human Services and placed in the home of their biological father and step-mother.

After being placed with their father, K.C. and B.S. continued to disclose incidents of abuse involving the Defendant. K.C.'s father informed police of the subsequent disclosures and the children were brought back to the advocacy center for follow-up forensic interviews on December 13, 2019. During the interview of K.C., K.C. disclosed that the Defendant beat him up, punched his weewee, and kicked him. K.C. stated that the Defendant whipped him and his sister, and that no one fed him. During the interview of B.S., B.S. stated that the Defendant would step on K.C., punch and kick him, and use a basket and belt to whip K.C. B.S. stated that there was a sore on K.C.'s leg from where the Defendant used a belt and the metal part caused the injury. B.S. told the

interviewer that the Defendant would pull down K.C.'s pants and whip him with the belt. She disclosed that the Defendant would use a big black basket and put it over K.C. B.S. told the interviewer that sometimes the Defendant would allow K.C. to eat and sometimes she would not. After being placed with his father, K.C. gained six-and-a-half pounds in ten days and according to Detective Clark "looked like a different kid."

**PROPOSED WITNESSES AND**
**TIME OF DIRECT EXAMINATION**

The United States expects to call the following witnesses in its case-in-chief. The anticipated time for the direct examination and a summary of the expected testimony is provided for each witness. *Note:* This is not an exhaustive list of potential witnesses in the case, nor is it an all-inclusive list of the topics each witness will discuss at trial. Rather, the following is merely the witnesses and topics the United States believes may be necessary.

1. **K.C.**
   **Approximately 45 minutes**
   **Victim**

This witness will testify regarding his daily life and interests; his relationship with defendant; the physical abuse and neglect the defendant perpetrated against him; the impact that abuse has had on him; and all other facts and circumstances consistent with the above summary and the statements this witness made in his forensic interviews.

2. **B.S.**
   **Approximately 45 minutes**
   **Sister of the Victim**

This witness will testify to the family dynamics in the home. She will testify to the acts of physical abuse and neglect that she witnessed the defendant commit against K.C.. The witness will testify consistent with the statement she previously made in her forensic interviews.

    3.      **Ginger Cornish**
            **Approximately 30 minutes**
            **School Counselor**

This witness will testify to her observations of K.C. at school. She will testify to her actions on December 3, 2019. She will testify consistently with the statements she gave to police.

    4.      **Michelle Swimmer**
            **Approximately 30 minutes**
            **Hospital Social Worker**

This witness will testify to her observations of K.C. at the hospital on December 3, 2019. She will testify that K.C. identified the person who hurt him as his "aunt Paula." She will testify consistently with the statements she gave to police.

    5.      **Ofc. Brian Green**
            **Approximately 30 minutes**
            **McAlester Police Department**

This witness will testify that he was the first officer on the scene when police were called. He will testify to his observations of K.C. He will testify consistently with his report.

    6.      **Belinda Merritt**
            **Approximately 30 minutes**
            **Oklahoma Department of Human Services**

This witness will testify to her participation in the investigation of this case. She will testify regarding her observations and investigation. She will testify consistently with the report generated by the Oklahoma Department of Human Services.

    7.      **Derek Pacula**
            **Approximately 30 minutes**
            **Former Boyfriend of Defendant**

This witness will testify to his observations of K.C. and his family. He will testify that he lived in the home with the Defendant and K.C. up until May of 2017 and he is the father of the Defendant's children. He will testify consistently with the statement he gave police.

8. **Brendon Williams**
   **Approximately 30 minutes**
   **Cousin of the Victim and Defendant**

This witness will testify that he was temporarily staying with his grandmother, Cecilia Stines to help take care of his grandmother and grandfather. This witness will testify to his observations within the family home. He will testify consistently with the statement he gave police.

9. **Cindy Sanford, ARNP-CP**
   **Approximately 60 minutes**
   **Nurse Practitioner**

This witness will testify that she evaluated K.C. at the Child Advocacy Center on December 3, 2019. She will testify that she documented the various injuries to K.C.'s body. She will testify that on December 13, 2019 she did a follow up appointment with K.C. and documented the healing progress of his injuries.

10. **Dr. Lauren K. Conway, D.O.**
    **Approximately 60 minutes**
    **Expert Witness**

This witness will testify to all aspects of her knowledge in the area of child physical abuse and neglect, to her review of the victim's medical records, and to her diagnosis of the victim.

11. **Brian Eugene Smith**
    **Approximately 30 minutes**
    **Father of the Victim**

This witness will testify to his observations of the victim and his sister after they were placed in his care. He will testify that the children continued to discuss the Defendant and the

crimes she perpetrated against them, and his actions in contacting police for follow-up forensics. He will testify to the change in K.C.'s condition after K.C. was placed with him.

12. **Ofc. Max Clark**
    **Approximately 45 minutes**
    **Investigator for the McAlester Police Department**

This witness will testify to his investigation of child abuse and neglect against the Defendant. He will testify consistently with his reports, including testifying to his observations and actions on December 3, 2019, his search of, as well as photographs taken, of the Defendant's home, and all other aspects of his investigation.

13. **SA Andrea Hamilton**
    **Approximately 30 minutes**
    **Expert Witness—Forensic Interviewer/Mental Health Specialist**

This witness is an expert regarding child abuse. She will testify about the process of disclosure, which includes explaining why children wait and do not tell someone immediately about abuse, and why children will disclose more information about abuse over time.

14. **Representative(s) of the Creek Nation**
    **Approximately 15 minutes**

If necessary, this witness will establish that the Defendant is a member of the Creek Nation with some degree of Indian blood.

## FACTUAL AND LEGAL ISSUES

At this time, the Government anticipates the following legal issue:

**ADMISSIBILITY OF K.C.'S HEARSAY STATEMENTS TO HOSPITAL SOCIAL WORKER MICHELLE SWIMMER**

While being evaluated and treated at the hospital, K.C. made a number of statements to hospital employee, Social Worker Michelle Swimmer, regarding who had hurt him. K.C. identified the Defendant to Swimmer as the perpetrator of the abuse. K.C. told Swimmer that his Aunt Paula would hurt him and that she pinches his ears very hard and whips him. K.C. told Swimmer that he was afraid of his aunt.

Although hearsay testimony is generally inadmissible, Federal Rule of Evidence 803(4), contains an exception for "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Additionally, a declarant's statement to a physician that identifies the person responsible for the declarant's injuries is ordinarily inadmissible under Rule 803(4) because the assailant's identity is usually unnecessary either for accurate diagnosis or effective treatment. *United States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993). However, the Tenth Circuit has held that a hearsay statement identifying of a sexual abuser who is a member of the victim's family or household because the intimate relationship between the victim and the abuser makes the abuser's identity relevant to properly treat the victim. *Id*. At 1495.

In this case, the hospital staff must know who the perpetrator of the abuse is in order to properly treat the victim and ensure that the treatment is successful. The declarant need not make the statement directly to the treating physician. The advisory committee in the notes on the rule explain that "statements to hospital attendants, ambulance drivers, or even members of the family might be included." K.C. made his statement to a hospital employee, Michelle Swimmer, who was placed with K.C. to ensure that while he was in the hospital he received proper treatment. His

statement to Swimmer was necessarily relied upon by medical staff to ensure that he was properly treated. K.C.'s statements are admissible under Federal Rule of Evidence 803(4). The Government would be happy to brief this issue in more detail for the Court should the Court require it.

## CONCLUSION

The United States respectfully submits this Trial Brief to anticipate the factual and legal issues which may arise at trial.  The United States requests that this Court grant it leave to submit additional briefing should subsequent issues be identified.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/Morgan Muzljakovich
MORGAN MUZLJAKOVICH, OBA # 32852
Assistant United States Attorney
520 South Denison
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
Morgan.Muzljakovich@usdoj.gov

**CERTIFICATE OF SERVICE**

  I, hereby certify that on April 4, 2022, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

  Sarah Erlinder, Attorney for Defendant.

            s/Morgan Muzljakovich
            MORGAN MUZLJAKOVICH
            Assistant United States Attorney