IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>PAULA AMBER CHISHOLM,<br><br>*Defendant.* | Case No. CR-21-194-RAW |

**GOVERNMENT'S NOTICE OF INTENT TO ADMIT
EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS**

COMES NOW, the United States of America, by and through United States Attorney Christopher J. Wilson, and Assistant United States Attorney Morgan Muzljakovich, and hereby gives Notice to the Defendant of its intent to offer evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b).

**STATEMENT OF THE CASE AND FACTS**

On April 20, 2021, the Defendant was charged in a complaint with Child Abuse in Indian Country in violation of Title 18 U.S.C. §§ 1151, 1153 and Title 21, Oklahoma Statute, § 843.5. (Doc. 1). On May 13, 2021, the Grand Jury returned an Indictment for Paula Amber Chisholm with one count of Child Abuse in Indian Country violation of 18 U.S.C. §§ 1151, 1153, and Title 21, Oklahoma Statute, § 843.5(A), and one count of Child Neglect in Indian Country in violation of 18 U.S.C. §§ 1151, 1153, and Title 21, Oklahoma Statute, § 843.5(C). (Doc. 16).

On December 3, 2019, school officials at Jefferson Early Childhood Center called for an ambulance to transport five year old, K.C., to the hospital due to his lethargic behavior and possible injury. While at school, K.C.'s teacher noticed that K.C. was acting very sluggish and had bruising on his ears, left cheek, and eye. School Counselor Ginger Cornish questioned K.C. about the marks

1

and, although reluctant to speak, K.C. identified his aunt as having caused the marks. K.C. was taken to McAlester Regional Health Center for evaluation. Detective Clark with the McAlester Police Department responded to the call and met the ambulance at the hospital.

At the time, K.C. and his older sister were in a guardianship with his maternal grandmother, Cecilia Stines. K.C. and his sister, B.S., lived with Stines, several cousins, and his aunt the Defendant Paula Chisholm. Due to Stines deteriorating health and wheelchair bound status, K.C. was primarily cared for by the Defendant. The Defendant arrived at the hospital after being notified by the school that K.C. needed to be medically transported. The Defendant arrived at the hospital with a bag of food and requested investigators tell K.C. that she was there and had his favorite snack for him.

At the hospital, K.C. informed staff and the hospital social worker that the Defendant would whip him and pinch his ears. While at the hospital, medical staff and law enforcement noted numerous injuries to K.C. The injuries included cuts, abrasions, bruises, and pressure ulcers in various stages of healing. Also noted was purple bruising on the tips of both of K.C.'s ears. In addition to the physical injuries, K.C. was extremely malnourished. The description given in reports is that K.C. looked like "a little old man." His hair was thin, body extremely small, and he weighed twenty-eight pounds. While at the hospital and the child advocacy center later that same day, K.C. was extremely hungry and ate everything the staff gave him.

K.C., B.S., and two of K.C.'s cousins were forensically interviewed later that day at the local Child Advocacy Center. K.C. was reluctant to talk with the interviewer but expressed fear of the Defendant and stated that his aunt punched him. B.S., B.C., and M.C. made no disclosures during their interviews that day. K.C. and B.S. were removed by the Oklahoma Department of Human Services and placed in the home of their biological father and step-mother.

After being placed with their father, K.C. and B.S. continued to disclose incidents of abuse involving the Defendant. K.C.'s father informed police of the subsequent disclosures and the children were brought back to the advocacy center for follow-up forensic interviews on December 13, 2019. During the interview of K.C., K.C. disclosed that the Defendant beat him up, punched his weewee, and kicked him. K.C. stated that the Defendant whipped him and his sister, and that no one fed him. During the interview of B.S., B.S. stated that the Defendant would step on K.C., punch and kick him, and use a basket and belt to whip K.C. B.S. stated that there was a sore on K.C.'s leg from where the Defendant used a belt and the metal part caused the injury. B.S. told the interviewer that the Defendant would pull down K.C.'s pants and whip him with the belt. She disclosed that the Defendant would use a big black basket and put it over K.C. B.S. told the interviewer that sometimes the Defendant would allow K.C. to eat and sometimes she would not. After being placed with his father, K.C. gained six-and-a-half pounds in ten days and according to Detective Clark "looked like a different kid."

On December 10, 2019, shortly after the Defendant was arrested in State Court on charges related to the instant offenses, Derek Pacula made a report to police. Pacula is the biological father of the Defendant's children. Pacula stated that he left Paula in 2017. Pacula was familiar with the family arrangements because he lived in the home with the family prior to breaking up with the Defendant. Pacula said that even though the legal guardian of K.C. and B.S. was Cecelia Stines, he witnessed the Defendant being the primary caregiver to K.C. and B.S. Pacula told police that while he was living with the family, he witnessed the Defendant push K.C. down, grab K.C. by the ears, and hit K.C.

**ARGUMENT AND AUTHORITIES**

**I.      FEDERAL RULE OF EVIDENCE 404(b)**

The evidence, as provided through the Government's witness, Derek Pacula, of the Defendant's prior acts of pushing K.C., grabbing his ears, and hitting him should be admitted under Federal Rule of Evidence 404(b). Federal Rule of Evidence 404-provides in pertinent part:

> **(b) Crimes, Wrongs, or Other Acts.**
> I. *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> II. *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>> **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>> **(B)** do so before trial —or during trial if the court, for good cause, excuses lack of pretrial notice.

"Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Burgess*, 576 F.3d 1078, 1098 (10th Cir. 2009), citing *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001). Fed. R. Evid. 404(b)(1) states evidence cannot be used if its only purpose is to expose "a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the evidence may be admitted as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Tenth Circuit Court requires a district court to apply a four prong test to determine if the Rule 404(b) evidence is admissible. First, the court must determine if the evidence is offered for the proper purpose; Second, it must be relevant; Third, the court must determine, according to Rule 403, whether the probative value is substantially outweighed by its potential for unfair prejudice; and Fourth, the trial court shall, upon request, instruct the jury that evidence of similar

4

wrong acts is to be considered only for the proper purpose for which it was admitted. *United States v. Zamora,* 222 F.3d 756, 762 (10th Cir.2000).

As part of the four pronged test, the Court, upon request, should give the jury an instruction regarding the reasons for which they can consider the evidence if it is admitted. The Government anticipates the Defendant will request that a jury instruction be read and the Government has no objection to the reading of such an instruction.

In applying this four prong test, first the Court should find the evidence is offered for a proper purpose. The Government is seeking to admit testimony regarding the Defendant's actions toward K.C.'s as evidence that the Defendant engaged in a common scheme or plan. Two years prior to the charged conduct, the Defendant was seen by another adult committing the same types of acts that she is charged with here. Based on the descriptions of K.C. and B.S., the physical abuse to K.C. was an on-going thing that occurred several times. Pacula's statement about what he observed shows that the Defendant engaged in a common scheme or plan with regards to physical abuse on K.C.

The descriptions by Pacula also goes to show to the perpetrator's identity. The Defendant has indicated that another person in the family home is responsible for the abuse perpetrated on K.C. and she has maintained her innocence. This is directly contradicted by the actions that Pacula witnessed in the family home in 2017 when he lived with the Defendant, her children, and K.C. and B.S.

In addition to these purposes for admission, the Government also submits that statement by Pacula goes to prove absence of mistake or lack of accident. Pacula's description, along with the descriptions given by K.C. and B.S. of the abuse that was going on within the home, show a continuing conduct that was prevalent. Such continuing conduct goes to show that this was no one time accidental excessive spanking or lack of mistake on the Defendant's part by failing to provide

appropriate medical care and nurturance to K.C. Instead, what Pacula's description shows is that the Defendant acted repeatedly in deliberately abusing and neglecting K.C.

Next, the Court must determine that the proffered evidence is relevant. For much of the same reasons discussed above, the proffered evidence is relevant. The acts described by Pacula that were witnessed by him in 2017, mirror the acts that occurred in 2019 when K.C. and B.S. give descriptions to the forensic interviewers of the abuse. Additionally, the description by Pacula of the Defendant pinching K.C.'s ears matched the physical evidence of abuse. At the hospital in 2019, K.C. had significant bruising to the tips of his ears.

Next, the Court should determine that the proffered evidence is more probative than prejudicial. The Government acknowledges that description of prior abuse by Pacula could possibly have a prejudicial effect on the trier of facts, however, the prejudicial nature of the evidence is not outweighed by its probative nature. The description of abuse is very probative of the Defendant's actions in the indictment. The Defendant did not just accidentally or mistakenly abuse and neglect the victim, but instead engaged in a continual course of conduct that resulted in these charges. The Defendant's actions as described by Pacula closely mirror his actions in the charged conduct and therefore the videos are very probative of the Defendant's common scheme or plan, identity, absence of mistake, and lack of accident in committing the charged conduct.

## CONCLUSION

The Government requests the Court allow the admission of the evidence detailed in this motion under Rule 404(b) for the purpose of proving common scheme or plan, identity, and absence of mistake or lack of accident.

                Respectfully submitted,

                CHRISTOPHER J. WILSON
                United States Attorney

s/    <u>Morgan Muzljakovich</u>
       MORGAN MUZLJAKOVICH, OBA # 32852
       Assistant United States Attorney
       520 Denison Avenue
       Muskogee, Oklahoma 74401
       Telephone: (918) 684-5100
       Email: Morgan.Muzljakovich@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2022, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

    Sarah Erlinder, Attorney for the Defendant

s/    <u>Morgan Muzljakovich</u>
       MORGAN MUZLJAKOVICH
       Assistant United States Attorney