IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>PAULA AMBER CHISHOLM,<br><br>*Defendant.* | Case No. CR 21-194-RAW |

## UNITED STATES' SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Morgan Muzljakovich, and respectfully submits the following Sentencing Memorandum:

## INTRODUCTION AND BACKGROUND

On December 3, 2019, school officials at Jefferson Early Childhood Center called for an ambulance to transport a five-year-old child, K.C., to the hospital after his teacher noticed that K.C. was acting very lethargic and had bruising on his ears, left cheek, and eye. School Counselor Ginger Cornish asked K.C. about his injuries, and though reluctant to speak, K.C. identified his aunt as having caused the bruises. K.C. was taken to McAlester Regional Health Center for evaluation. Detective Clark with the McAlester Police Department responded to the call and met the ambulance at the hospital.

At the time, K.C. was in a guardianship with his maternal grandmother Cecilia Stines and lived with his sister, B.S., several cousins, and his aunt, the Defendant Paula Chisholm. Because Stines was in deteriorating health and wheelchair bound, K.C. was primarily being cared for by the Defendant. K.C.'s mother is deceased and his father did not have custody of him.

At the hospital, K.C. disclosed to staff and the hospital social worker that the Defendant would whip him and pinch his ears. Medical staff and law enforcement noted numerous injuries to K.C. The injuries included cuts, abrasions, bruises, and pressure ulcers in various stages of healing. Also noted was purple bruising on the tips of both of K.C.'s ears.

In addition to the physical injuries, K.C. was extremely malnourished. K.C. was described as looking like "a little old man." His hair was thin, body extremely small, and he weighed only twenty-eight pounds at the time. K.C. was extremely hungry while at the hospital and the child advocacy center and was eating everything the staff gave him.

The Defendant arrived at the hospital with a bag of snacks while K.C. was being evaluated and insisted the DHS worker tell K.C. she was there with food for him to eat. She told the DHS worker that totes and a basket had fallen over on top of K.C., but he was sleeping and she did not wake him.

The Department of Human Services placed K.C. and B.S. in the home of their biological father and stepmother. After being placed with his father, K.C. began to gain weight, and his injuries started healing. K.C. and B.S. continued to disclose incidents of abuse involving the Defendant. K.C.'s father informed Detective Clark of the disclosures, and follow-up forensics were scheduled. Detective Clark was also present on December 13, 2019, for K.C.'s follow-up appointment with his doctor. Clark noted the differences in K.C.'s appearance and demeanor since he'd been removed. Clark stated "K.C. looked like a different kid."

During the subsequent forensic interviews, K.C. disclosed the Defendant "beat him up", "punched him in the weewee", and "kicked him." He also said the Defendant whipped him and his sister, and no one fed him. During B.S.'s forensic interview, she disclosed the Defendant would step on K.C., punch and kick him, and use a basket and belt to whip him. She stated the Defendant would tell her own children to be mean to K.C. and B.S. She disclosed that the Defendant would tell K.C. and B.S. that she, the Defendant, did not like them and neither did Jesus. She stated that the sore on

K.C.'s leg was from the Defendant using a belt and the metal part caused the injury. B.S. said the Defendant would pull down K.C.'s pants and whip him with the belt. She stated that the Defendant would use a big black basket and put it over K.C.

At trial, over fifty photographs were admitted into evidence that documented the injuries that the Defendant caused to K.C.'s body. K.C. had marks, pressure ulcers, lacerations, and bruises from the top of his head to the tips of his toes.

The Defendant maintained her innocence throughout the proceedings but was ultimately found guilty by a jury on January 12, 2023, of the Child Physical Abuse of K.C.

## **SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

There is no federal child abuse statute or guideline. The assimilated Oklahoma Child Abuse Statute under Title 21, Section 843.5(A) has no mandatory minimum and carries up to life imprisonment. It permits a sentencing court to fashion a felony child abuse sentence of any length. To determine the appropriate sentencing guideline for a felony offense for which no guideline has been expressly promulgated, the United States Sentencing Guidelines Section 2X5.1 requires the trial court to "determine if there is a sufficiently analogous guidelines, and if so, to apply the guideline that is most analogous."

To determine if there is a sufficiently analogous guideline to a particular crime the Court should compare the elements of the crime of conviction to the elements of the federal offenses already covered by a specific guideline. *See United States v. Nichols*, 169 F. 3d 1255, 1270-1271 (10th Cir. 1999). The Court need not compare facts of the case, but merely the elements of the offenses. *See United States v. Clark*, 981 F.3d 1154, 1164 (10th Cir. 2020).

The Oklahoma Supreme Court's Uniform Jury Instruction Criminal 4-35 details the elements of the crime of child abuse. The elements depend on the relationship between the victim and the Defendant. The elements then can be either (1) a person responsible for a child's health, safety, or

welfare, (2) willfully or maliciously, (3) harmed the health, safety, or welfare, (4) of a child under the age of 18; or (1) a person willfully or maliciously, (2) injured, tortured, or maimed, (3) a child under the age of 18. In each set of elements, the victim's age is a necessary element. In contrast, a federal assault is either an attempted battery or placing another in reasonable apprehension of immediate bodily harm without regard to the victim's age. *United States v. Muskett*, 970 F.3d 1233, 1241 (10th Cir. 2020).

Although a sufficiently analogous offense will necessarily not have the same elements as the offense of conviction, there must be a sufficient degree of similarity between the two. *United States v. Clark*, 981 F.3d 1154, 1166 (10th Cir. 2020). The proffered guideline need only be within the same proverbial ballpark as the offense of conviction. *Id*. at 1163. The element of the victim's age contained in Oklahoma Child Abuse statute's elements is too far removed to be considered within the same ballpark as the federal aggravated assault statute. Therefore, the Court should find that there is no analogous guideline to be applied to the charge of Child Abuse in Indian Country.

After finding that there is no analogous guideline to be applied to the crime of conviction, the Court should still consider the factors under 18 U.S.C. § 3553(a) in determining the appropriate sentence. The goal of sentencing is to achieve a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). In doing so, the Court must account for a variety of factors specific to the particular defendant and particular case. The framework for determining an appropriate sentence is set forth in § 3553(a). Specifically, § 3553(a) requires that the court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to avoid unwarranted sentencing

disparities; and (7) the need to provide restitution to the victims of the offense.

Here, Defendant's criminal conduct is extremely serious and demands an appropriately serious sentence. Not only has the Defendant never accepted responsibility for her acts of abuse, the offense she committed was against a motherless five-year-old boy. As a pseudo mother figure to K.C., the Defendant should have been the person showering him with love and affection, but instead she mercilessly beat him and trapped him under laundry baskets. By all accounts, the Defendant was responsible for the health, safety, and welfare of multiple children in the home, including her own. But only K.C. appears to have suffered serious abuse at her hands. K.C. was targeted, for whatever reason, by the Defendant as an outlet for whatever frustrations she was feeling.

The physical abuse Defendant perpetrated on K.C. will have an impact on him for the rest of his life. While K.C. is now in a loving home environment, and his physical injuries have mostly healed, he still bears the mental, emotional, and physical scars of the Defendant's abuse.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

*/s/ Morgan Muzljakovich*
MORGAN MUZLJAKOVICH, OBA #32852
Assistant United States Attorney
Attorney for the Plaintiff
520 Denison Avenue
Muskogee, OK 74401
(918) 684-5100
Fax (918) 684-5150

## CERTIFICATE OF SERVICE

      I hereby certify that on February 6, 2024, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Susan Anderson
Chalet Braziel
Attorneys for Defendant

                                            s/     Morgan Muzljakovich
                                                   MORGAN MUZLJAKOVICH
                                                   Assistant United States Attorney