IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CR-21-194-RAW |
| | ) | |
| PAULA AMBER CHISHOLM, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Paula Amber Chisholm, through undersigned counsel, respectfully submits this memorandum for the Court's consideration at sentencing. Though Ms. Chisholm has maintained her innocence of the criminal charges through trial, she understands the jury convicted her of count one of the indictment, Child Abuse in Indian Country, and the Court must fashion an appropriate sentence. Ms. Chisholm requests the Court impose a sentence of time-served (approximately 26.5 months of custody including all state and federal presentence credit), followed by three years of supervised release.

The requested sentence is consistent with the Court's overarching statutory charge to impose a sentence sufficient but not greater than necessary to achieve a just punishment, afford adequate deterrence, protect the public, and provide a defendant with needed training, medical care, and other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a), (a)(2). The requested sentence is also appropriate upon consideration and balancing of the other sentencing factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentence available, the applicable sentencing guideline range, pertinent policy statements of the Sentencing Commission, the need to avoid

1

unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. §§ 3553(a)(1), (3)-(7).

While a typical starting point in the sentencing analysis is to calculate the appropriate guideline range, the parties here dispute whether there is an analogous guideline for the state-law-defined offense of conviction. The Oklahoma statute that defines the offense of Child Abuse and prescribes the punishment sweeps broadly, encompassing misconduct that may not warrant prison time as well as conduct that warrants up to life in prison. While the Oklahoma statute appropriately acknowledges there are varying degrees of culpability and harm that may warrant different sanctions for Child Abuse, the statute itself offers little guidance for sentencing beyond its limitless sentencing range. Appropriate guidance can be found, however, in the United States Sentencing Guidelines.

As Ms. Chisholm urged in her objections to the Presentence Report, an appropriate sanction for the offense conduct here can be found in U.S.S.G. § 2A2.3. However, even if the Court does not find that Section 2A2.3 is an analogous guideline based on an elements analysis, the guideline can still be instructive here. Section 2A2.3 applies to assaults resulting in substantial bodily injury to a child under age 16, which is reasonably analogous to the specific conduct of which Ms. Chisholm was convicted here under count one: harming the health, safety, and welfare of her nephew K.C. by physically assaulting him between November 19, 2019 and December 5, 2019. Applying this guideline would result in an offense level of 11 (consisting of base level 7 plus 4 levels for substantial bodily injury to a child under age 16), resulting in a guideline range of 8-14 months given the criminal history category of I.

The requested sentence of time-served would well exceed the high end of the range generated under Section 2A2.3. Ms. Chisholm has spent approximately 26.5 months in custody

2

for this offense (including 12.5 months in federal custody and 14 months in state custody before the state case was dismissed under *McGirt*). When considering the standard 15% good time credit in the federal system, the requested time-served sentence is the equivalent of a 31-month sentence. Such a sentence is adequate and no greater than necessary to achieve the statutory goals of sentencing under 18 U.S.C. § 3553(a).

The requested sentence is a substantial punishment that sanctions and condemns the conduct underlying the offense of conviction (assaultive behavior—*e.g.,* striking and pinching—committed over a relatively brief and discrete period in late 2019) and the substantial harm to K.C. (injuries including marks and bruises). The requested sentence recognizes the jury acquitted Ms. Chisholm of the more serious allegations of long-term nutritional neglect in count two. Though some government witnesses expressed alarm at K.C.'s small stature and thin hair, the evidence included evidence he had always been small, that he had always had thin hair and a receding hairline, that he ate regularly at home and at school, and that he *gained weight* over the period charged in count two (and did so at a faster rate than he did during a similar period after he was placed with his father). The Court should not increase Ms. Chisholm's sentence based on the allegations of neglect in count two, because they are not adequately supported by the record and because the jury acquitted her on count two.[1]

---

[1] The Court should avoid increasing Ms. Chisholm's punishment in reliance on the allegations in count two (Child Neglect), including alleged nutritional neglect, for which the jury acquitted Ms. Chisholm. To punish either acquitted or uncharged conduct is arguably unconstitutional. In any event, it is discouraged by noted jurists including jurists now sitting on the Supreme Court.

While the Supreme Court held in *United States v. Watts*, 519 U.S. 148, 156-57 (1997) that a sentencing court may consider acquitted conduct if proved by a preponderance of evidence, current and former Supreme Court Justices as well as other jurists have called the *Watts* holding into question. For example, in *United States v. Jones*, 135 S. Ct. 8, 8-9 (2014), Justice Scalia dissented from denial of certiorari and, joined by Justices Thomas and Ginsburg, encouraged the Court to decide whether the Due Process Clause and the Sixth Amendment's jury trial right permit judges

The requested sentence is consistent with the presence of mitigating factors, including that Ms. Chisholm had been placed in the untenable, overwhelming position of caring for too many children in a single household where other adults and caregivers were unwilling or unavailable to help her. At the time in question, she had to care for her three children, multiple nieces and

---

to sentence defendants based on uncharged or acquitted conduct. When sitting as a Tenth Circuit judge, Justice Gorsuch, writing for the majority in *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014), cited to Justice Scalia's dissent in *Jones* when stating that "[i]t is far from certain whether the Constitution allows" a district judge to "increase a defendant's sentence (within the statutorily authorized range) based on facts the judge finds without the aid of a jury or the defendant's consent."

In *United States v. Bell*, 808 F.3d 926 (D.C. Cir. 2015), Circuit Judge Millett wrote in her concurrence in denial of rehearing en banc that "allowing a judge to dramatically increase a defendant's sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee." *Id.* at 929. Judge Millett rejected as unsatisfactory the oft-cited explanations for this different treatment, which note the lower standard of proof at sentencing and that the sentence cannot exceed the statutory maximum. *Id.* at 930-31. She noted this conflicts with the constitutional underpinnings of the reasonable-doubt standard and undermines the integrity of the jury right. *Id.* Judge Millett also observed that even the Supreme Court's Sixth Amendment jurisprudence since *Watt* has cast doubt on the categorical rule that judges can rely on acquitted conduct at sentencing. *Id.* at 392 (citing *Alleyne v. United States*, 133 S. Ct. 2151 (2013) (holding that a jury must find any fact that increases a mandatory minimum sentence)). Finally, Judge Millett was concerned that "counting acquitted conduct at sentencing gives the government a second bite at the apple" and imposes pressure on defendants to forego trial because, "unless they run the board and are absolved of *all* charges," they "will face all the risks of conviction, with no practical upside to acquittal." *Id.* at 932.

While sitting as a judge on the District of Columbia Circuit for the *Bell* case, now-Justice Kavanaugh agreed with his colleague Judge Millett's "overarching concern about the use of acquitted conduct at sentencing," and "[wrote] separately to underscore that the problem identified by Judge Millett may be addressed by individual district judges at sentencing." *Bell*, 808 F.3d at 927. He wrote that "[a]llowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial." *Id.* at 928. He specifically encouraged district judges who may find they must factor in acquitted or uncharged conduct when calculating the guidelines to nevertheless use their power to vary downward if necessary "to avoid basing any part of the ultimate sentence on acquitted or uncharged conduct." *Id.* In his view, "district judges would do well to heed Judge Millett's concern in appropriate cases." *Id.*

nephews, and her own parents. Her father was suffering from dementia, and her mother (the actual legal guardian of K.C. and his sister) was suffering from lupus and other ailments that had hospitalized her and ultimately rendered her immobile and less able to contribute as much with the care of the children. To be sure, the conduct underlying the conviction is serious and unacceptable, but it is more consistent with overwhelm and frustration during a particularly trying time than with malice or evil intention or targeting. Ms. Chisholm loved all of the children. She made sure they got to school and to church and that their milestones were celebrated. People who observed Ms. Chisholm and the children over time, such as other relatives and church members, testified positively about Ms. Chisholm as a mother and caregiver of children. Accepting the jury's verdict for purposes of sentencing, as the Court must, does not preclude recognizing that the offense conduct occurred over a particularly overwhelming time during one school holiday break in late 2019 and was out-of-character for Ms. Chisholm.

The requested sentence will achieve specific and general deterrence. No more prison time is needed to convince Ms. Chisholm to remain law-abiding and never to engage in such offense conduct. She has not only spent 26.5 months incarcerated, that time has been especially hard on her given her poor health. Even after she is released, the stigma and disabilities that come with a felony Child Abuse conviction will follow her the rest of her life. She has already suffered the devastating collateral consequence of losing custody of her own three children. These punishments and collateral consequences are more than sufficient to deter both Ms. Chisholm and others in the community from committing the offense of Child Abuse.

The requested sentence is adequate to protect K.C. and the public from any risk Ms. Chisholm may present. That risk has been minimized already by the deterrent effect of the time Ms. Chisholm has served in custody, and it will continue to be minimized by the supervision

Probation will provide after she is released. Ms. Chisholm's release will present no risk to K.C. or his sister, as they have been adopted into a stable and loving home where they will have no interaction with Ms. Chisholm. In addition, Ms. Chisholm's lack of criminal history suggests she is a low risk to the community. This is her first felony conviction. She is 38 years old. While she does have two misdemeanors in her past relating to theft, they are nearly 20 years old. This is her first time in prison, and she has serious health issues. She has felt this term in prison more keenly than a repeat offender or a younger healthier person, and she does not require a lengthier prison term to punish, deter, or incapacitate her.

    A time-served sentence would promote the medical, correctional, and rehabilitative needs of Ms. Chisholm in the most effective manner. As the Court is aware, Ms. Chisholm suffers from rheumatoid arthritis, which causes her pain and impairs her mobility and stamina. She suffers other health complications, including side effects from her arthritis medication. More recently, blood tests revealed concerns about her kidneys, liver, and spleen, which will require her to see a specialist. These health issues make incarceration more physically challenging for Ms. Chisholm than for a healthy individual, and her medical needs would be met more effectively if she is released to supervision in the community, where she could promptly make her own appointments with physicians and specialists. Her health issues also provide her a great incentive to remain law abiding and to meticulously follow all the conditions of her supervised release, to avoid being re-incarcerated and losing the ability to control her own healthcare.

    Finally, a time-served sentence with a term of supervised release would not work an unwarranted disparity in sentencing, as it would account for the unique and individual circumstances of Ms. Chisholm and the offense conduct underlying the conviction.

The 3553(a) factors support a sentence of time-served followed by three years of supervised release.

Respectfully submitted:   February 14, 2024.

JON M. SANDS
Federal Public Defender District of Arizona

 s/Susan E. Anderson
SUSAN E. ANDERSON
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
(602) 382-2700
Counsel for Defendant Chisholm

## CERTIFICATE OF SERVICE

I certify that on February 14, 2024, I caused the foregoing document to be filed with the Clerk of Court for the United States District Court for the Eastern District of Oklahoma using the CM/ECF system. I further certify that government counsel are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                        *s/Susan E. Anderson*
                                        SUSAN E. ANDERSON
                                        Asst. Federal Public Defender

Copy e-mailed to:

Hannah E. Massoth
U.S. Probation Officer

 *s/sea*